UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE VERNON HARRISON and KECELIA WEBBER,<br><br>   Debtors,<br>_____<br>VERNON HARRISON and<br>KECELIA WEBBER,<br><br>   Appellants,<br><br>   v.<br><br>LEE INVESTMENT GROUP, INC. *et al.*,<br><br>   Appellees. | No. 1:13 cv 1139<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Debtors Vernon Harrison and Kecelia Webber appeal from the bankruptcy court's Order of Default and the Judgment Order Determining Debt Excepted From Discharge.[1] Harrison and Webber assert that the bankruptcy court erred in the following ways: by allowing creditors, Lee Investment Group and Robert E. Lee, to file their amended complaint two days after the bankruptcy court's deadline for doing so; by denying Harrison and Webber's motion to dismiss for Lee Investment

---

[1] The Court has jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citations to this Court's docket are noted as "R. [docket entry number]," followed by a description of the document in that entry. Citations to documents in the Record on Appeal filed in the adversary proceeding *Lee Investment Group, Inc. v. Harrison*, Adv. Proc. No. 11-AP-02243 (Bankr. N.D. Ill.) are noted by a description of the document and then the bankruptcy docket entry number ("Bankr. Dkt. [number]").

Group's purported lack of capacity to sue, failure to state a claim for fraud with sufficient particularity, alleging promissory fraud not recognized under Illinois law, and making contradictory statements in the complaint; by denying Harrison and Webber's motion in limine, motion to vacate the order of default, and motion for relief from the order of default and order denying motion to vacate and motion in limine; by issuing its judgment order; and by setting the amount of judgment stated in its judgment order. R. 14, Appellants' Br. at 3-8. For the reasons stated below, the bankruptcy court's order and judgment are affirmed.

**I. Background**

The appellants, Harrison and Webber, entered into a Citgo Gas Station Investment Agreement with the appellees, Lee Investment Group and Robert E. Lee (together, Lee) in May 2003. Pls.' Am. Compl. ¶¶ 10, 20 (Bankr. Dkt. 25). Lee invested $100,000 in exchange for 15% of First Gas's (the gas station's business name) profits and a guaranteed 10% return on the $100,000 investment. *Id.* ¶¶ 11-12. The gas station opened in July 2005. *Id.* ¶ 15. Harrison and Webber filed for bankruptcy protection in 2011. Appellants' Br. at 8. Lee filed complaints against Harrison and Webber to determine dischargeability of the debts owed by each. Appellants' Br. at 8. These cases have been consolidated on appeal. *See* R. 9, 2/19/13 Minute Entry.

In the bankruptcy court, Harrison and Webber filed a motion to dismiss Lee's complaint for failure to state a claim. After denying this motion to dismiss, the court nevertheless struck the original complaint and gave Lee until February 23, 2012, to

file an amended complaint. Order Mot. Dismiss Adversary Proceeding (Bankr. Dkt. 23). Lee filed the amended complaint two days after the deadline, *see* Pls.' Am. Compl. at 7 (Bankr. Dkt. 25) (certificate of service dated Feb. 25, 2011), and Harrison and Webber did not (at that time) object to the late filing, *see* R. 16, Appellees' Br. at 2. The complaint alleged that Harrison and Webber falsely represented that the proceeds from the business operations would be used for corporate purposes, and instead used the money for personal expenses. Pls.' Am. Compl. ¶¶ 30-31. Harrison and Webber filed a motion to dismiss the amended complaint for failure to state a claim and for lack of standing to sue. Def.'s Mot. Dismiss at 1-3 (Bankr. Dkt. 26). Specifically, Harrison and Webber argued that Lee did not plead fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). *Id.* at 3-5. Harrison and Webber also argued that Lee did not have standing to sue because Lee Investment Group was involuntarily dissolved by the Secretary of State in October 2011. *Id.* at 2. Lee Investment Group's corporate status was reinstated in 2012 and is currently in good standing. Appellees' Br. at 2. The bankruptcy court rejected both of Harrison and Webber's arguments and denied their motion to dismiss the amended complaint. *See* 4/17/12 Tr. at 8.

Following this denial, the bankruptcy court issued a Final Pretrial Order requiring that each party submit a list of trial exhibits and witnesses by December 18, 2012. Final Pretrial Order at 1-2 (Bankr. Dkt. 39). The order required that any objections to the exhibits or witnesses be submitted by December 23, 2012, and required each party to file a trial brief by December 28, 2012. *Id.* at 2-3. The order

also set the final pretrial hearing for January 3, 2013. *Id.* at 4. The order stated that "[f]ailure to comply with the provisions of this order may result in waiver of claims or defenses, dismissal, default, exclusion or admission of evidence or other sanction, as justice may require." *Id.* at 1. By the first deadline, December 18, 2012, neither party had exchanged lists of exhibits or witnesses. On December 26, 2012, Lee called Harrison and Webber's attorney to let him know that they were sending the exhibit and witness lists. Appellants' Br. at 17-18. Harrison and Webber's attorney informed Lee that he was leaving the country and may not be back in time for the pretrial conference on January 3, 2013. *Id.* Harrison and Webber assert that because they had received no pretrial documents from Lee, they concluded that Lee would not be able to introduce any exhibits or present witnesses and would, therefore, be unable to prove the allegations in their complaints. *Id.* at 18.

On January 3, 2013, Harrison and Webber did not attend the final pretrial conference. Order of Default (Bankr. Dkt. 41). Furthermore, Harrison and Webber had submitted no pretrial materials. *Id.* As a consequence, the bankruptcy court entered an order of default against both Harrison and Webber because of their failure to appear and failure to comply with the Final Pretrial Order. *Id.* Harrison and Webber immediately filed a motion to vacate the order of default and a motion in limine to exclude certain witnesses and evidence, both of which were scheduled to be heard on the same day as the trial and final prove-up: January 9, 2013. Def.'s Mot. Vacate (Bankr. Dkt. 45); Def.'s Mot. in Limine (Bankr. Dkt. 46); *see also* Appellants' Br. at 9. At the trial, the court denied the motions and allowed Lee to

4

admit affidavits regarding the amount of debt owed. Order on Def.'s Mot. Vacate (Bankr. Dkt. 53); Order on Def.'s Mot. in Limine (Bankr. Dkt. 54); *see also* Appellants' Br. at 9. Harrison and Webber filed a motion for relief from the order of default and the orders denying the motions to vacate and motions in limine. Defs.' Mot. Relief from Orders (Bankr. Dkt. 55). This motion was also denied, and two days later the court entered a judgment determining that the debts of both Harrison and Webber were exempt from discharge and entered judgment in favor of Lee in the amount of $160,246.57. Order on Defs.' Mot. Relief from Orders (Bankr. Dkt. 57); Judgment Order (Bankr. Dkt. 58). This amount represents the original $100,000 investment, a 10% guaranteed return on investment for six years, and interest. Appellants' Br. at 22. Harrison and Weber now appeal.[2]

## II. Standard of Review

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court for clear error and reviews the bankruptcy court's legal findings *de novo*. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). Decisions left to the discretion of the bankruptcy court, however, are reviewed "only for an abuse of discretion." *Id.* This is an exacting standard: "a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record

---

[2]Harrison and Webber's briefs are single spaced, oddly formatted, and difficult to read. Appellants would be well-advised to comply with this Court's formatting rules.

contains no evidence on which the court rationally could have relied." *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

Failure to state a claim is a legal decision, and is therefore reviewed *de novo*. *In re Rose*, 585 F.3d 306, 309 (7th Cir. 2009). Denials of a motion to vacate an order of default, or of a motion in limine, on the other hand, are reviewed for abuse of discretion. *See Eskridge v. Cook Cnty.*, 577 F.3d 806, 808-09 (7th Cir. 2009); *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009); *In re Leventhal*, 481 B.R. 409, 420 (N.D. Ill. 2012) (applying an abuse-of-discretion standard to a bankruptcy-court determination). Likewise, damage awards are reviewed for abuse of discretion and are only disturbed if the award was plainly excessive. *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014).

## III. Discussion

### A. Capacity to Sue

Lee Investment Group, although dissolved at the time, did have the capacity to sue under the relation-back doctrine as codified in the Illinois Business Corporation Act. The relation-back doctrine "permits a reinstated corporation to ratify actions taken on its behalf during a period of dissolution, and gives those actions legal effect from the time they were taken." *Dep't of Revenue v. Semenek*, 551 N.E.2d 314, 315 (Ill. App. Ct. 1990). Harrison and Webber argue that Lee lacked standing to sue because, in 2011, Lee Investment Group was involuntarily dissolved by the State of Illinois and was not reinstated until after the deadline for filing an Adversary Proceeding had passed. Appellants' Br. at 13-14. In support of

6

this position, Harrison and Weber rely on *Jorgensen v. Baker*, which held that if a dissolved corporation is not reinstated before the end of the statute-of-limitations period, it cannot file suit. 157 N.E.2d 773, 777 (Ill. App. Ct. 1959). But *Jorgensen* has been superseded. The Illinois Business Corporation Act, which was passed after *Jorgensen*, states that:

> Upon filing of the application for reinstatement, *the corporate existence shall be deemed to have continued without interruption* from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors and shareholders, acting or purporting to act as such, *which would have been legal and valid but for such dissolution, shall stand ratified and confirmed.*

805 ILCS 5/12.45(d) (emphases added). Thus, section 12.45(d) codified the relation-back doctrine in a form broader than the common-law version stated in *Jorgensen*, and, now, dissolved corporations may file suit prior to reinstatement. *See Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 39-41 (Ill. App. Ct. 2001) (holding that a dissolved corporation was allowed to commence proceedings even if the cause of action accrued while the corporation was dissolved).

The present case is governed by the statutorily expanded relation-back doctrine. Lee Investment Group commenced the action when it was dissolved, but the action accrued when it was in good standing. Thus, Lee Investment Group is "deemed to have continued without interruption," and the objections to discharge "which would have been legal and valid but for such dissolution, shall stand ratified

7

and confirmed." 805 ILCS 5/12.45(d). This Court holds that Lee had capacity to oppose the discharge of Harrison and Webber's debts in the bankruptcy court.

## B. Timeliness of Complaint

Any question of the timeliness of the filing of Lee's Amended Complaint has been forfeited by Harrison. Harrison and Webber argue now, for the first time on appeal, that Lee's amended complaint was not filed in a timely manner in the bankruptcy court. Appellants' Br. at 13. After Lee's original complaint was struck, the bankruptcy court allowed Lee until February 23, 2012, to file an amended complaint. Order Mot. Dismiss Adversary Proceeding (Bankr. Dkt. 23). Lee filed its amended complaint on February 25, two days late. *See* Pls.' Am. Compl. at 7 (Bankr. Dkt. 25). Yet Harrison and Webber did not object to the short delay, and instead moved to dismiss on other grounds and then filed an answer (after their motion to dismiss was denied) without raising any issue of timeliness.

Under Federal Rule of Civil Procedure 8(c), time bars must generally "be raised in an answer or responsive pleading." *Kontrick v. Ryan*, 540 U.S. 443, 458 (2004) (noting that Fed. R. Civ. P. 8(c) is also applicable to adversary proceedings in bankruptcy courts by Fed. R. Bankr. P. 7008(a)). Moreover, a party who fails to do this may nevertheless raise a timeliness objection to a complaint in an amended answer, or even seek leave to amend her complaint to add such an objection after that time has passed so long as justice so requires. *Id.* at 459. When a timeliness defense is not included in the answer or amended answer, however, that defense is lost. *Id.* And only an objection to "lack of subject-matter jurisdiction is preserved post-trial." *Id.*

8

Harrison and Webber did not object to the tardiness of Lee's amended complaint in their motion to dismiss, in their answer, or in any of their other responsive pleadings in front of the bankruptcy court. This is the first occasion on which any objection to the amended complaint's timeliness has been raised. It is too late. Consequently, this Court holds that Harrison and Webber have forfeited any timeliness objections to Lee's amended complaint.[3]

### C. Failure to State a Claim

Harrison and Webber raise three objections to the sufficiency of the complaint: that the complaint does not specify when the alleged misrepresentation took place; that a promise of a future performance is not fraud; and that Lee's pleadings of fraud are contradicted by other allegations in the pleading. Lee's Amended Complaint pleads fraud with sufficient particularity. The arguments are meritless, and the Court discusses each of these objections in turn.

First, Harrison and Webber assert that Lee was required, and failed, to plead *when* the alleged false representation occurred. Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be stated with sufficient particularity. In its Amended Complaint, Lee thus must have alleged details sufficient "to alert the defendant[s] of the purported fraud [they] are defending against." *New Century Bank, N.A. v. Carmell*, 424 B.R. 401, 412 (Bankr. N.D. Ill. 2010). In *In re Speisman*, 495 B.R. 398, 401 (Bankr. N.D. Ill. 2013), the court held that this requirement was

---

[3]This is a requirement that may be forfeited: as *Kontrick* held, "the filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate. 540 U.S. at 454.

9

satisfied by a complaint that identified "who made the misrepresentation[,] state[d] the time, place and content of the misrepresentation[,] and describe[d] how the misrepresentations were conveyed." And, in *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011), the Seventh Circuit noted that under Federal Rule of Civil Procedure 9(b), "the plaintiffs-appellants had to state with particularity the circumstances constituting fraud. This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessary differ based on the facts of the case." (citation omitted). Although these cases indicate that *when* the fraud occurs may often be an important, or even necessary, element of pleadings, often is not always. The ultimate question considered by this Court is whether the plaintiff has "adequately detail[ed], in broad strokes, the nature and essential factual elements of the alleged fraud . . . its purposes, or the critical facts which are purportedly misrepresentations." *Adair v. Hunt Int'l Res. Corp.*, 526 F. Supp. 736, 744 (N.D. Ill. 1981).

Lee has done exactly this. As the Bankruptcy Court recognized:

The plaintiffs allege, among other things, that they entered into a Citgo gas station investment agreement with First Gas in May 2003; that prior to entering into that agreement, the defendants represented to the plaintiffs that the proceeds of the business would be used for corporate purposes; that those representations were false and known to be false at the time; that Harrison and Webber treated First Gas bank accounts as their own and withdrew funds for their personal use. The proceeds of plaintiffs' investment and revenue from the business operations were used to purchase several luxury vehicles and that as a result of the defendants' actions the plaintiffs did not receive the amount of payment provided in the parties' investment agreement.

10

4/17/12 Tr. at 6-7. Together, these details are sufficient to provide, in "broad strokes, the nature and essential factual elements of the alleged fraud . . . its purposes, or the critical facts." *Adair*, 526 F. Supp. at 744. Even if this description did not specify exactly when the representations in question occurred, there is little question that Harrison has been alerted to the allegations against him. *New Century Bank*, 424 B.R. at 412.

Second, Harrison and Webber argue, for the first time on appeal, that promissory fraud involving a false statement of intent regarding future conduct is generally not actionable unless it was part of a scheme to defraud. Because Harrison and Webber did not raise this issue in the bankruptcy court, Harrison and Webber have forfeited it. *See United Nat'l Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 38-39 (N.D. Ill. 1984). Even were this objection not forfeited, however, the Court would nevertheless find it unavailing. As *Desnick v. American Broadcasting Cos.* noted, "[o]ur best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." 44 F.3d 1345, 1354 (7th Cir. 1995). That is what allegedly happened in the present circumstance; Harrison's promises were more than "puffery, bragging, 'mere words,' and casual bonhomie." *Id.* Rather, Harrison made a "serious commitment" to Lee: "Harrison represented to the plaintiffs that the proceeds were being used for corporate purposes and that First Gas would be operated as a for-profit business enterprise,"

11

and, in fact, went so far as to solemnize a *guaranteed* 10% return on Lee's investment. Pls.' Am. Compl. ¶¶ 10-12, 30 (Bankr. Dkt. 25). This is actionable regardless of whether this constitutes ordinary fraud or promissory fraud.

Third, Harrison and Webber assert that the pleadings of fraud are contradicted by other allegations of the pleading. *See* Appellants' Br. at 4, 14-15 (comparing Pls.' Am. Compl. ¶ 30 (alleging that Harrison and Webber "represented to the plaintiff that the proceeds [of the investments] were being used for corporate purposes and that First Gas would be operated as a for-profit business enterprise for the benefit of investors, including plaintiffs."), with *id.* ¶ 26 (noting that "although Harrison spent most or all of his working days managing the operations of First Gas, he claimed to receive no compensation for his effort")). Moreover, the complaints say that First Gas produced returns for Lee for periods in 2005 and 2006, *see* Pls.' Am. Compl. ¶¶ 16-17—an implicit acknowledgment, claim Harrison and Webber, that it was not a fraudulent investment. The Court does not read these allegations as contradictory. The first two statements cited by Harrison and Webber do not in any way contradict each other. And, the fact that Lee acknowledges the receipt of some returns from First Gas is in no way contradictory to Lee's claim that its First Gas deal was fraudulent; it is common for fraudulent deals, such as pyramid schemes, to provide several years of seemingly legitimate returns to investors. Neither of these alleged contradictions are sufficient to provide any basis for a ruling in Harrison and Webber's favor.

**D. Denial of Harrison and Webber's December and January Motions**

Harrison and Webber also appeal several bankruptcy-court decisions relating to that court's January 3 order of default: Harrison and Webber now argue that the court abused its discretion by denying their motion to vacate the court's January 3 order of default, that the court abused its discretion in denying their motions in limine on January 9, and that the court abused its discretion in denying their motion for relief from its orders of January 3 and January 9. Given the many overlapping issues between these claims, this Court reviews—and rejects—these arguments together.

First, to determine that a default judgment must be vacated, "the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (internal quotation marks and citation omitted). One relevant consideration in determining whether to grant the motion to set aside a default can be the moving party's culpability in that default. *See, e.g.*, *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982); *see also Accu-Weather, Inc. v. Reuters Ltd.*, 779 F. Supp. 801, 804 (M.D. Pa. 1991) (setting aside a default where the defendant did not exhibit any culpable conduct).

Harrison and Webber cannot show good cause for their counsel's failure to attend the pretrial conference. Their counsel asserts that he was unable to attend the final pretrial conference because his flight was delayed. *See* Appellants' Br. at 17-18; *see also* Def.'s Mot. Vacate at 4 (Bankr. Dkt. 45). But he provides no affidavits, flight itineraries, tickets, or notices of delay in support—nor does he

identify the flight he was allegedly scheduled to take, the reasons for the alleged delay, any information on the flight he ended up taking, or the date and flight number of the flight he ultimately took. Instead, the only evidence this Court has regarding his plans is what he told Lee's counsel, s*ee* Mem. Opp'n Mot. Vacate Default (Bankr. Dkt. 50), Exh. 1, Mahoney Aff. ¶ 3 (alleging that Harrison and Webber's counsel informed Lee's counsel on December 26, 2012 that he would not attend the final pretrial conference because he was leaving the country and would not be back in his office until January 7, 2013), and what was revealed by his email autoreply, *see id.* ¶ 6 ("This is an automated reply. I am out of the office and will be returning Monday, January 7, 2013."). The record thus reflects that not only have Harrison and Webber failed to provide any evidence of good cause for their counsel's failure to attend the conference, but their counsel appears to bear the sole responsibility for this failure.

Moreover, Harrison and Webber cannot show good cause for their failure to submit a trial brief or any other pretrial materials before their counsel's departure from the country. Harrison and Webber claim that this error, too, was excusable: Lee did not timely serve them with a list of exhibits and witnesses to be used at trial (Lee informed Harrison and Webber, eight days after the materials were due, that he would be late). But Harrison and Webber do not explain *how* Lee's tardiness prevented them from submitting their own pretrial materials, and Harrison and Webber did not raise any issues with the timeliness of these filings until *after* the

14

default had been filed. Harrison and Webber had from December 18 to December 26 to file a motion to vacate, and did not do so.

Had Harrison and Webber's failure to submit pretrial materials been the only basis for default, this might be a closer question. But when viewed together with their counsel's outright failure to attend the pretrial conference—a hearing that is almost always essential to holding a smooth trial—this Court concludes that the bankruptcy court did not abuse its discretion in declining to vacate its default judgment. *See, e.g.*, *Wehrs*, 688 F.3d at 890; *Eskridge*, 577 F.3d at 808-09.

Similarly, the bankruptcy court did not abuse its discretion in denying Harrison and Webber's motions in limine. Harrison and Webber admit that their "arguments as to why the denial of its motion in limine was error are the same as the arguments as to why the order of default should have been vacated[:] Everything hinges on the equal applicability of the Final Pre-Trial Order to both Appellees and Appellants." R. 21, Appellants' Reply Br. at 4. In other words, Harrison and Webber are arguing that the bankruptcy court could not have permitted Lee to file its pretrial materials late while holding Harrison and Webber strictly to the deadlines: to do so must be an abuse of discretion. As has already been discussed, however, the bankruptcy court had ample reason to treat Lee's late submission of its pretrial materials differently from Harrison and Webber's failure to submit *any* pretrial materials or so much as even attend the pretrial conference. Moreover, as Lee points out (and Harrison and Webber do not dispute), all of the proposed exhibits implicated by Harrison and Webber's motions in limine had

15

already been provided to Harrison and Webber. Appellees' Br. at 12. In this context, the bankruptcy court's denial of Harrison and Webber's motions in limine was not an abuse of discretion. *Von der Ruhr*, 570 F.3d at 862.

Finally, Harrison and Webber assert that their failure to submit the required pretrial materials constitutes excusable neglect, and that the bankruptcy court erred in denying their motions for relief from its January 3 and January 9 orders. The bankruptcy court did not abuse its discretion. Courts must take a broad view in evaluating a claim for excusable neglect, considering "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Thus, when "determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Id.* at 397. Here, the Final Pretrial Order was entered seven months before the conference date. Harrison and Webber's counsel chose to be out of the country on that date. As the bankruptcy court reasonably recognized, "There's no mistake, inadvertence, surprise, or excusable neglect. There's no newly discovered evidence that with reasonable diligence couldn't have been discovered in time. There's no fraud. There's no allegation that the judgment—the prior order is void. There's no reason—I haven't been given any reason to justify the relief requested." 1/15/13 Tr. at 16. This ruling does not amount to an abuse of discretion.

### E. Judgment Based on Affidavits

The final issue may be quickly disposed of. The bankruptcy court did not err in issuing its order of judgment based only on affidavits. This is because a "default judgment establishes, as a matter of law, that defendants are liable to plaintiff[s] on each cause of action alleged in the complaint." *Wehrs*, 688 F.3d at 892. Nor was the court's determined amount of judgment clearly excessive. Although "[damages] must be proved unless they are liquidated or capable of calculations," courts should not generally "reverse a damages award in a default judgment unless it is clearly excessive." *Id.* (internal quotation marks and citation omitted). Here, it is uncontroverted that the principal amount invested was $100,000 and that Harrison guaranteed Lee a 10% rate of return. Given this, the amount awarded by the bankruptcy court, the $100,000 principal plus the 10% guaranteed rate of return, plus interest, was appropriate.

### IV. Conclusion

For the reasons discussed above, the bankruptcy court's order and judgment are affirmed.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 14, 2014